**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CORTNEY CARLENA KAY GOFF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 25-CV-693-CVE-CDL** |
| | ) | |
| **THE CITY OF TULSA, TIMOTHY MARLER,** | ) | |
| **SERGEANT BROWN, THOMAS BELL,** | ) | |
| **JAMIE KIRBY, AND JILLIAN PHIPPEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**OPINION AND ORDER**</u>

Now before the Court are Defendant City of Tulsa's Motion to Dismiss (Dkt. # 10) and Defendants' Joint Motion to Dismiss (Dkt. # 22). Plaintiff Cortney Carlena Kay Goff filed this case asserting claims under 42 U.S.C. § 1983 after her car was towed based on plaintiff's decision to leave the vehicle parked in the street from January 23 to March 7, 2024 following a hit and run accident. Plaintiff has named the City of Tulsa (the City) and five individual Tulsa Police Department (TPD) officers as defendants. Defendants argue that plaintiff's allegations do not state a plausible claim that her constitutional rights were violated, and the individual defendants argue that they have qualified immunity from suit. The City also argues that plaintiff has not alleged that her vehicle was towed or sold due to an unconstitutional policy or custom.

**I.**

Plaintiff alleges that she formerly rented a home located on North Delaware Avenue in Tulsa, Oklahoma, and she parked her vehicle on the street in front of her home. Dkt. # 1, at 7. On January 23, 2024, plaintiff claims that her vehicle was damaged in a hit and run accident during a winter storm, and she contacted TPD and her insurance company to report the incident. <u>Id.</u> Plaintiff alleges

that TPD Officer Stephen Parrish responded to her report of a hit and run accident and formally

opened an investigation.  Id.  Plaintiff claims that she left her vehicle parked in the street pending

the settlement of her insurance claim.  Id.  On February 27, 2024, TPD Officer Chambers went to

investigate an anonymous complaint about an abandoned vehicle parked in front of plaintiff's home.

Id.  Plaintiff explained that her vehicle had been involved in a hit and run accident, and she was

actively maintaining the registration and insurance for the vehicle.  Id. Chambers agreed with

plaintiff that her vehicle was not abandoned and closed the anonymous complaint.

On March 7, 2024, TPD Officer Timothy Marler went to plaintiff's home to investigate the

same anonymous complaint of an abandoned vehicle that she alleges was investigated and resolved

by Chambers.  Id.  Plaintiff alleges that Marler arrived when she was at work, and Marler determined

that plaintiff's vehicle was abandoned.  Id.  Marler had plaintiff's vehicle towed by Allied Tow, and

plaintiff claims that Marler failed to exercise "due diligence" by neglecting to review all available

information about plaintiff's vehicle prior to requesting a tow.  Id.  Plaintiff spoke to employees of

Allied Tow, TPD Sergeant Brown, and TPD Captain Bell to complain about the allegedly unlawful

towing of her vehicle, and she claims that her complaints were disregarded.  Id. at 8.  Plaintiff's

vehicle was later sold, and she filed an internal affairs complaint directed to TPD Captain Jaimie

Kirby.  Id.  Kirby found that no officer misconduct took place during the towing and sale of

plaintiff's vehicle.  Plaintiff contacted TPD Major Jillian Phippen to request further review of the

towing incident, and Phippen informed plaintiff that she deemed the towing to be valid.  Id.

On December 23, 2025, plaintiff filed this case alleging claims under § 1983 against the City

and numerous TPD officers involved with the towing and sale of her vehicle.  Plaintiff asserts that

defendants' actions violated her constitutional rights under the Fourth and Fourteenth Amendments, and she seeks compensatory and punitive damages.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

In addition, pro se pleadings must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972). For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff. Hall, 935 F.2d at 1109; Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). Pro se complaints are held to less stringent standards than pleadings drafted by lawyers, and the court must construe them liberally. Haines, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir.1994).

## III.

The individual defendants argue that they have qualified immunity from suit, because plaintiff has not alleged any facts suggesting that defendants' conduct violated her constitutional rights or that the law supporting plaintiff's claims was clearly established when the alleged constitutional violations occurred. Dkt. # 22. The City contends that it cannot be held liable unless the Court finds that one of the individual defendants violated plaintiff's constitutional rights, and plaintiff also has not made any allegations suggesting that her constitutional rights were violated because of an official City policy or custom.[1] Dkt. # 10. Plaintiff responds that defendants are

---

[1] The City also argues that plaintiff cannot proceed with any claims under state law, because she failed to provide notice of her claims under the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. Plaintiff misunderstands the City's argument, and she argues that she does not need to file notice to proceed with a claim against the City under § 1983. Dkt. # 15, at 8. It appears that plaintiff has no intention of asserting a state law tort claim against the City, and the Court will not separately analyze the City's potential liability under state law.

attempting to deflect responsibility for their unlawful actions onto her, and she contends that the towing of her vehicle was an unlawful seizure under the Fourth Amendment. Dkt. # 24, at 2-3. She also argues that City failed to properly train its officers concerning the proper procedures for towing a vehicle, and she claims that the City denied her a pre-deprivation hearing before the sale of her vehicle. Dkt. # 15, at 8.

Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The elements necessary to establish a § 1983 violation "will vary based on the constitutional provision at issue." Ashcroft, 556 U.S. at 676. Regardless of the constitutional provision at issue, however, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). In the context of § 1983 claims against multiple individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original). "[T]he complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).[2]

---

[2]    Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

When the defendant is a municipal entity, the "under color of state law" element of a § 1983 claim requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

"The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must show that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). Plaintiff bears the burden to allege that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Court will initially consider whether plaintiff has alleged sufficient facts to support an inference that defendants' conduct violated her constitutional rights. Plaintiff appears to be alleging three distinct types of claims in her complaint. First, plaintiff alleges that Marler improperly

determined that her vehicle was abandoned when he chose to have the vehicle towed.  Second, she alleges that the other individual officers named as defendants violated plaintiff's constitutional rights by failing to investigate her complaints concerning the towing and sale of her vehicle. Finally, plaintiff generally alleges that the City denied her notice and an opportunity to challenge the sale of her vehicle.

Plaintiff alleges that Marler unlawfully seized her vehicle in violation of the Fourth Amendment, because he incorrectly determined that her vehicle was abandoned and he failed to perform "due diligence" during his investigation of an anonymous complaint about plaintiff's vehicle. Dkt. # 1, at 7; Dkt. # 15, at 4.  The Fourth Amendment does apply to the seizure of vehicles, whether or not the seizure takes place as part of a criminal investigation, but the nature of the police investigation affects the legal standards applicable to a party's challenge to the seizure of a vehicle. United States v. Kendall, 14 F.4th 1116, 1121-22 (10th Cir. 2021).  In cases when a vehicle is seized or impounded outside the context of a criminal investigation, the Supreme Court has recognized that police may exercise a community caretaking function to take automobiles into custody when the vehicle is "violat[ing] parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic."  South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976).  The Tenth Circuit has considered the towing and impoundment of vehicles on many occasions, and the Tenth Circuit has "upheld impoundment of vehicles parked in private lots and other locations where unoccupied vehicles may still constitute nuisances, although their impact on traffic is questionable." United States v. Trujillo, 993 F.3d 859, 867 (10th Cir. 2021).  In evaluating whether impoundment of a vehicle under the community caretaking exception was proper, the Tenth Circuit has created a five factor test:

> (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle; (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

United States v. Venezia, 995 F.3d 1170 (10th Cir. 2021).

The Court will rely on plaintiff's allegations concerning the location of her vehicle and the circumstances surrounding the impoundment to determine whether Marler could have believed he could lawfully order the towing of plaintiff's vehicle. Before considering plaintiff's constitutional claim, the Court will initially consider whether Marler reasonably believed that he could order plaintiff's vehicle to be towed under municipal law. Plaintiff plainly alleges that her vehicle was parked on the street in front of her house from at least January 23 to March 7, 2024, meaning her vehicle was parked on a public street for 44 days without being moved. Under municipal law, a "vehicle parked in excess of twenty four (24) hours is hereby declared one endangering or threatening the public safety and convenience and impeding or likely to impede the efficient movement of vehicular or pedestrian traffic," and such a vehicle "may be impounded" if the vehicle is parked on a public street. TULSA, OKLA., Code § 37-519 (2023). Plaintiff's allegations establish that her vehicle was parked on a city street continuously for more than 24 hours, and Marler had a reasonable basis to believe that plaintiff's vehicle was subject to impoundment under municipal law. This finding is not dispositive of plaintiff's constitutional claim, but the Court will take into account that Marler's decision to order the towing of plaintiff's vehicle was consistent with municipal law when evaluating plaintiff's claim that the towing of her vehicle violated her Fourth Amendment rights.

Applying the <u>Venezia</u> factors, the Court finds that towing of plaintiff's vehicle also could not give rise to a violation of plaintiff's Fourth Amendment rights. Plaintiff admits that her vehicle was parked on a public street, and the vehicle was involved in a hit and run accident because it was parked on public street during a winter storm. The first <u>Venezia</u> factor (location of vehicle) weighs in favor of impoundment. The fact that plaintiff's vehicle was parked on a public street means that the second <u>Venezia</u> factor is inapplicable. Plaintiff admits that she was not home when Marler arrived to investigate an anonymous complaint of an abandoned vehicle in the road, and plaintiff alleges that he should have contacted her before having the vehicle towed. Dkt. # 1, at 7. However, her vehicle had been parked on a city street for 44 days, and she had ample opportunity to move her vehicle prior to the tow. The Court finds that third <u>Venezia</u> factor (alternative to impoundment) is neutral and does not strongly support either party, as Marler acted within his discretion to tow the vehicle even if could have attempted to contact plaintiff prior to the towing. There is no evidence that plaintiff used the vehicle to commit a crime, although the Court has already determined that the vehicle was parked on the street in violation of municipal law, and the Court finds that the fourth <u>Venezia</u> factor is inapplicable. Finally, plaintiff did not consent to the impoundment of her vehicle. The Court gives significant weight to the undisputed fact that plaintiff's vehicle was parked on a public street for 44 days and her vehicle had been involved in an accident. Plaintiff's vehicle was the subject of an anonymous citizen's complaint and Marler correctly determined that the vehicle was parked on public street for an excessive period of time in violation of municipal law. Even if another police officer declined to tow plaintiff's vehicle, Marler's decision to impound plaintiff's vehicle pursuant to municipal law was reasonable and did not violate plaintiff's Fourth Amendment rights.

Even if plaintiff had alleged sufficient facts to state that a constitutional violation occurred, her § 1983 claim against Marler would also fail due to plaintiff's failure to plead facts that Marler acted with the requisite intent. Plaintiff alleges that Marler failed to exercise "due diligence" when he determined that plaintiff's vehicle was abandoned under municipal law. Dkt. # 1, at 7. She claims that another officer, Chambers, had already investigated an anonymous complaint concerning plaintiff's vehicle, and Marler should have reviewed Chambers' findings before initiating the tow. Id. She further alleges that Chambers confirmed that plaintiff maintained the registration and insurance for the vehicle, and Marler should have known that there was an ongoing hit and run investigation concerning plaintiff's vehicle. Id. Plaintiff may have alleged a viable negligence claim against Marler, but her allegations provide no basis for plaintiff to prevail on a § 1983 claim against Marler. The law is well established that negligence alone does not provide a basis for recovery under § 1983, and a plaintiff must allege that a state actor deliberately or intentionally violate her constitutional rights in order to state a § 1983 claim. Jones v. Salt Lake County, 503 F.3d 1147, 1163 (10th Cir. 2007); Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992). The Court takes into account that plaintiff is proceeding pro se, and a broad reading of her allegations suggests that Marler should have conducted a more thorough investigation before having her vehicle towed. However, there is no basis for the Court to infer that Marler's actions rise above the level of negligence. Defendants argue that municipal law prohibits any person from leaving a vehicle parked on the street for more than 24 hours, and plaintiff admits that her vehicle was parked on the street from January 23 to March 7, 2024. Marler could have reasonably concluded that plaintiff's vehicle was parked on the street in violation of municipal law, even if a more thorough investigation

might have provided a basis to refrain from towing plaintiff's vehicle.[3]  Even if the Court were to assume that towing plaintiff's vehicle violated the Fourth Amendment, she has not adequately alleged that Marler deliberately or intentionally violated plaintiff's constitutional rights, and she has not stated a § 1983 claim against Marler.

As to the remaining individual defendants, plaintiff alleges that each defendant was or should have been aware of a hit and run investigation concerning her vehicle, and each defendant allegedly failed to take any action to revoke the unlawful towing of her vehicle.  Dkt. # 1, at 8; Dkt. # 24, at 2.  The Court initially notes that plaintiff has cited no legal authority suggesting that a police officer commits a constitutional violation by communicating with a citizen and declining to take action based on the allegedly unlawful actions of another police officer.  Instead, the legal authority cited in plaintiff's response to the officers' motion to dismiss focuses solely on the sale of a person's seized property without procedural due process.  The Fourteenth Amendment to the United States Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The fundamental requirements of constitutional due process are notice and an opportunity to be heard.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).   There are no allegations that any of the individual police officers were responsible for giving plaintiff notice of an impending sale of her vehicle or that any officer

---

[3]     Plaintiff premises her claim against Marler on the assumption that it was necessary for her to leave the vehicle parked on the street due to a pending insurance claim and hit and run investigation.  Dkt. # 1, at 7; Dkt. # 15, at 3.  However, plaintiff provides no explanation in fact or law to support this assumption, and it is unclear why she believes that she could not have moved her vehicle to another location.  At most, plaintiff's allegations suggest Chambers and Marler reached different conclusions about the need to tow plaintiff's vehicle, and this would not support a claim that Marler conducted an illegal seizure in violation of the Fourth Amendment.

took any action to deny plaintiff procedural due process.  There are also no allegations that Brown, Bell, Kirby, or Jillian did anything other than respond to plaintiff's complaint that her vehicle was unlawfully towed, and it is not clear from plaintiff's allegations that she actually asked any of these officers about the process for regaining possession of her vehicle.[4]  The Court has already rejected plaintiff's claim that Marler acted unreasonably by having plaintiff's vehicle towed, and the Court finds no basis to hold the remaining individual defendants liable for rejecting plaintiff's demand to release her vehicle following a lawful impoundment.

Even if plaintiff could plausibly allege that her constitutional rights were violated, she also has the burden to establish that the constitutional right violated by the individual defendants was clearly established when the towing and sale of her vehicle took place.  Ibarra v. Lee, 135 F.3d 1257, 1260 (10th Cir. 2024); Frasier v. Evans, 992 F.3d 1003, 1021 (10th Cir. 2021).  The Tenth Circuit has explained that law is clearly established if the contours of a constitutional right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Perry v. Durborow, 892 F.3d 1116, 1123 (10th Cir. 2018).  The contours of a right are generally "sufficiently clear" only if the plaintiff "identif[ies] an on-point Supreme Court or published Tenth Circuit decision" or "shows 'the clearly established weight of authority from other courts [has] found the law to be as plaintiff maintains . . . .'"  Id.  District courts have been cautioned not to define a

---

[4]    Plaintiff suggests that she had no obligation to follow the procedures for regaining possession of her towed vehicle, because this would have constituted a "ransom" for the unlawful towing of her vehicle.  Dkt. # 15, at 8.  Plaintiff's belief that Marler mistakenly towed her vehicle for violation of municipal law does not mean that she was denied procedural due process by having to comply with the procedures to release her vehicle from the towing facility.  In any event, plaintiff has not alleged any of the individual officers had any role in the alleged denial of due process, and the Court will separately consider whether the City failed to provide adequate due process for the return of plaintiff's vehicle.

constitutional right "at a high level of generality" but, instead, "the clearly established law must be 'particularized' to the facts of the case." Id.  To find that the law is clearly established, the district court must "identify a case where an offic[ial] acting under similar circumstances as [defendant]" was held to have violated the constitutional right at issue. Id. at 1124.

Even if the Court assumes that a constitutional violation occurred, plaintiff must still show that the law supporting her claims was clearly established in order to proceed with her claims against the individual defendants.  The Court has reviewed plaintiff's responses to the motions to dismiss and does not find that plaintiff has shown that the law supporting her claims clearly establishes that a reasonable police officer would have understood that towing plaintiff's vehicle for an apparent violation of municipal law was a violation of plaintiff's constitutional rights.  She has also cited no authority suggesting that police officers who deal with a citizen complaint concerning an allegedly unlawful towing commit a constitutional violation merely by rejecting a person's complaint about the unlawfulness of another officer's conduct.  At most, plaintiff cites general legal authority concerning seizures under the Fourth Amendment and the denial of procedural due process, but she has made no substantial attempt to show that the law supporting her claims was clearly established. The Court finds that defendants Marler, Brown, Bell, Kirby, and Phippen have qualified immunity from plaintiff's § 1983 claims against them.

Plaintiff has also asserted a § 1983 claim against the City, although this claim fails for at least two significant reasons.  First, plaintiff has not sufficiently alleged that any of the individual defendants violated plaintiff's constitutional rights, and an essential element of a municipal liability claim under § 1983 is that a municipal employee commit a constitutional violation.  Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998).  Second, plaintiff has

failed to allege any facts suggesting a constitutional violation occurred because of an official policy or custom of the City, and this is also an essential element of a municipal liability claim. Monell, 436 U.S. at 694. The Court notes that plaintiff does allege that she did not receive notice and an opportunity to be heard prior to the sale of her vehicle, although plaintiff's allegations on this issue are so vague that the Court is unable to determine the factual basis for this claim. Plaintiff's response to the City's motion to dismiss clearly suggests that she was aware her vehicle had been towed and she knew that she could retrieve the vehicle from the towing facility by paying a fee. Dkt. # 15, at 8. Plaintiff plainly states that she had no "obligation to effectively pay a ransom for her own vehicle, by paying Allied Tow fees to retrieve," and she seems to be arguing that she had no duty to comply with the process for regaining possession of her vehicle due to her belief that the impoundment violated her Fourth Amendment rights. Id. Plaintiff cites no legal authority suggesting that a subjective belief that her constitutional rights were violated excuses her from paying a fee or otherwise comply with established procedures for retrieving her vehicle following an impoundment. Although plaintiff is proceeding pro se, the Court has no obligation to construct an argument on plaintiff's behalf, and the Court finds that she has made no attempt to plead an adequate claim concerning the lack of procedural due process against the City. The Court finds no other potential basis for relief, and the City's motion to dismiss (Dkt. # 10) is granted in its entirety.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion to Dismiss (Dkt. # 10) and Defendants' Joint Motion to Dismiss (Dkt. # 22) are **granted**. A separate judgment of dismissal is entered herewith.

**DATED** this 20th day of July, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE